JAIME A. LEAÑOS, Esq. SBN: 159471
MORALES & LEAÑOS
75 E. Santa Clara Street, Suite 250
San Jose, CA  95113
Telephone:  (408) 294-6800
Facsimile:   (408) 294-7102
E-mail:        jleanoslaw@pacbell.net

STEVEN CLARK, Esq.  SBN: 110351
LAW OFFICES OF STEVEN CLARK
10 Almaden Blvd., Suite 1250
San Jose, CA 95113
Telephone:  (408) 271-3245
Facsimile:   (408) 294-7102
E-mail:        steveclarklaw@aol.com

Attorney for Plaintiffs

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| JAMES SHOWMAN, VICTORIA CAULFIELD- SHOWMAN,<br><br>Plaintiffs,<br><br>v.<br><br>WAKANA OKUMA, individually and as a Police Officer of the San Jose Police Department, and DOES 1-10, inclusive,<br><br>Defendants. | **CASE NO:  CV 15-03712**<br><br>**COMPLAINT FOR DAMAGES**<br><br>1. 42 U.S.C. §1983 & 1981 (Fourth Amendment)<br>2. 42 U.S.C §1983 & 1981 (Due Process &   Fourteenth Amendment)<br>3. Wrongful Death<br>4. Negligence<br><br><br>**[JURY TRIAL DEMANDED]** |

COMPLAINT FOR DAMAGES

I. **INTRODUCTION**

1. This civil rights action seeks compensatory and punitive damages for JAMES SHOWMAN and VICTORIA CAUFIELD-SHOWMAN ( "Plaintiffs"), from San Jose Police Officer WAKANA OKUMA ("Defendant"), and Does 1-10 inclusive for violating various rights under the United States Constitution and state law in connection with the wrongful death of Plaintiffs' daughter, Diana Showman ("Decedent").

2. On the morning of August 14, 2014, San Jose Police Officer Wakana Okuma, and other officers were dispatched to 799 Blossom Hill Road, San Jose, California, in response to a 911 phone call by decedent, Diana Showman. The decedent was Bi-Polar and had been diagnosed at age six. During the twenty minute phone call, the decedent advised the operator that she had locked her mother and brother in a bedroom and would shoot them if the police did not respond. During the same conversation she asked the operator if she could get in trouble for lying to the police.

3. At approximately 10:40 a.m. Officer Okuma and Officer Anderson arrived in their marked patrol vehicles and parked to the side of the residence in the middle of Blossom Hill Road. Officer Okuma observed another officer with a 40mm less than lethal rifle. Officer Okuma then retrieved her AR-15 Rifle and took standing cover behind her vehicle with a clear view to the front of decedent's home. The 911 operator informed the decedent that the police were on-scene and she needed to listen to them.

4. After a few minutes Officer Okuma observed the decedent come out of her residence holding a cell phone in her left hand and what appeared to be a gun in her right hand. The item that Officer Okuma believed to be a gun was a cordless power drill. The decedent was walking slowly and eventually dropped the cell phone onto the ground. At this point, the decedent continued to walk slowly and waived the drill around and pointed it at other officers who did not fire their

weapons.

5. Officer Okuma then got the decedent's attention and called the decedent toward her. The decedent walked to her slowly with the drill still in her hand.  At least four officers were present with their weapons drawn as the decedent moved slowly toward Officer Okuma.  As the decedent moved closer, Officer Okuma   claims that she believed the drill was an Uzi and capable of firing multiple rounds with a single trigger pull.

6. When the decedent was approximately fifteen feet away from Officer Okuma, she thought the decedent was going to shoot her and she fired one round from her AR 15 rifle to the decedent's upper torso area. At no time did Officer Okuma advise the decedent that she would be shot if she did not drop the drill. The decedent fell back on to the ground and died a short time later.

7. Officer Okuma claims that she did not realize the gun was a drill until after the shooting.  None of the other officers fired their weapons. For some unknown reason, Officer Okuma retrieved the drill from the ground and took it to her patrol vehicle.  The drill was then returned to the decedent's location by another officer.

8. The force used by Officer Okuma  and DOES 1-10, in shooting Diana Showman as she was holding a drill and not an immediate threat to the life or  serious bodily injury to Officer Okuma or others   was excessive, unreasonable, and resulted in the wrongful death of  Diana Showman.

9. Plaintiffs, James Showman and Victoria Caulfield Showman, are the parents, successor and heirs of the decedent and bring this case to expose the wrong doing of the defendants and to vindicate Diana Showman's ("Decedent's") civil rights.

**II. JURISDICTION AND VENUE**

////

10. This Court has jurisdiction of the subject matter of this action under 42 U.S.C. Sections 1983 for the deprivation of rights secured by the Fourth and Fourteenth Amendments to the Constitution of the United States. The jurisdiction of this court is predicated upon 28 U.S.C. Section 1331.

11. The Court has personal jurisdiction over each named defendant named herein because the plaintiff is informed and believes and on that basis alleges that each defendant is currently domiciled in the State of California.

12. The court has pendant and supplemental jurisdiction over the state law claims alleged herein pursuant to 28 U.S.C. Section 1367. The pendant state law claims contained in this complaint arise from the same nucleus of operative facts, and involves identical issues of fact and law, as the federal claims, such that the entire action constitutes a single case appropriate for prosecution as a single proceeding.

13. On or about February 5, 2015, Plaintiff presented a written claim for damages with the San Jose City Clerk's Office pursuant to California Government Code Section 910 et seq. On March 23, 2015, the City of San Jose rejected Plaintiffs' claim. This complaint is thus timely and properly commenced on all state claims pursuant to applicable provisions of the Government Code.

14. Venue is proper in the Northern District of California, under 28 U.S.C. Section 1391(b)(1) and (2) because some or all of the defendants to this action reside in this District and because a substantial part, if not all, of the events or omissions giving rise to Plaintiff's claim occurred in this judicial district.

## II.   INTRADISTRICT ASSIGNMENT

15. Pursuant to Northern District Civil Local Rule 3-2 (c), intradistrict assignment to the San Jose Division of the Court is proper because a substantial part of the events or omissions giving rise to the claims herein occurred in the County of Santa Clara.

## III.     PARTIES

16.     Plaintiffs, JAMES SHOWMAN and VICTORIA CAULFIELD-SHOWMAN are the parents of the decedent, DIANA SHOWMAN, and are residents of the United States of America in Santa Clara County, California and afforded the protections and rights of the United States Constitution.  Decedent, DIANA SHOWMAN, died intestate in California.  Under the laws of California, including Probate Code §6402, the Plaintiffs are the heirs and beneficiaries of DIANA SHOWMAN and this action is brought for the benefit of said heirs, who are entitled to recover all damages, costs and expenses allowable by statute.

17.     Decedent was, at the time of her death, a resident of the City of San Jose, County of Santa Clara, and State of California, United States of America.

18.     Defendant, Officer Wakana Okuma, sued in both her individual and official capacities, is a resident of California on information and belief, and at all relevant times has been a Police Officer with the City of San Jose Police Department.

19.     Plaintiffs are informed and believe, and thereon allege, that at all times mentioned herein, each and every defendant was the agent, servant, employee, and/or representative of each and every other defendant and, in doing the things complained of herein, was acting within the scope of that agency, service, employment and in concert, and/or representation, and that each and every defendant is jointly and severally responsible and liable to plaintiffs for the damages hereinafter alleged.

20.     Plaintiffs are ignorant of the true names and/or capacities of defendants sued herein as DOES 1 through 10, inclusive, ("Doe Defendants") and therefore sue said defendants by such fictitious names.  Plaintiffs will amend their complaint to allege their true names and capacities when ascertained.

21.     Plaintiff is informed and believes and thereon alleges that each of the Doe Defendants is legally responsible and liable for the incident, injuries, and

damages set forth herein, and that each of the defendants proximately caused said incident, injuries, and damages by reason of their violation of constitutional and legal rights, negligence, breach of duty, negligent supervision, management or control, or by reason of other personal, vicarious or imputed negligence, fault or breach of duty, whether severally or jointly, or whether based upon agency, employment or control or upon any other act or omission.

22. Each of the Defendants, including Does 1 through 10, caused and is responsible for the unlawful conduct described herein and the resulting injuries and death by, among other things, personally participating in the unlawful conduct or acting jointly or conspiring with others who did so, with deliberate indifference to Plaintiffs' rights.

23. In doing the acts and/or omissions alleged herein, Defendant Wakana Okuma and Doe Defendants acted under color of authority and/or under color of law and pursuant to their respective authorities as police officers with City of San Jose.

24. All individual defendants are guilty of fraud, oppression, and/or malice that would justify the imposition of punitive and exemplary damages.

## IV.   FACTUAL ALLEGATIONS

25. On or about the morning of August 14, 2014, 19 year-old Diana Showman, the decedent, was at home at 799 Blossom Hill Road. Decedent called 911 on herself and told the dispatcher that she had a gun and had locked her mother and brother in a bedroom. Decedent indicated that she would shoot her mother and brother if the police did not respond. During that same conversation the decedent asked the 911 operator if she could get into trouble for lying to the police. The 911 call lasted approximately 20 minutes.

26. At the same time, Defendant Officer Okuma was on duty with the San Jose Police Department. She was operating a fully marked San Jose Police

patrol vehicle. Officer Okuma was wearing a San Jose police uniform and was equipped with typical police equipment on her persons, including non-lethal weapons.  On the date of the shooting Officer Okuma had thirteen years of experience with Crisis Intervention Training ("CIT".)

27.  At approximately 10:42 a.m., Officer Okuma responded to the call. Officer Okuma parked her patrol vehicle on Blossom Hill Road off to the side of decedent's home. Officer Okuma exited her patrol vehicle and saw other officers armed with non-lethal weapons. Officer Okuma then grabbed her department issued AR- 15 Rifle with a scope and took a position of cover behind her vehicle facing an unobstructed view of the front of decedent's residence.

28.  Shortly after Officer Okuma took her position, the decedent exited her residence and came into full view of Officer Okuma and the other officers.  At least four officers had their weapons pointed at the decedent. As the decedent exited her residence she had a cell phone one hand and a cordless power drill in the other hand. The officers agreed that Officer Okuma would speak to the decedent and try to place her under arrest.

29.  Officer Okuma claims that this was not a crisis intervention scenario and called the decedent over to her location. As the decedent moved toward the officers she dropped the cell phone and held onto the drill.  The decedent then waved the drill around walked slowly in the direction of Officer Okuma.  Officer Okuma had her rifle pointed directly at the decedent the entire time she spoke to her.

30. While moving slowly, the decedent stopped and pointed the drill at other officers who had their weapons drawn.  The other officers did not fire their weapons and the decedent pointed the drill down and continued to walk toward Officer Okuma very slowly.

31.  As decedent was responding to Officer Okuma's voice, she moved deliberately and slowly. The decedent was wearing shorts and a tee shirt and no

shoes. According to Officer Okuma the decedent was not talking and was looking straight at her. At no time the decedent verbally threaten or challenge the officer.

32. As the decedent was approximately fifteen feet away, Officer Okuma claims that the drill looked like an Uzi and she thought she was going to be shot. Though Officer Okuma claims the decedent had a blank stare, she also claims she could not tell the weapon was a drill. At least one civilian witness thought the weapon was a cordless drill.

33. As the decedent slowly raised the cordless drill, without warning, Officer Okuma fired one shot from her AR 15 rifle and struck the decedent in the upper torso area. At no time prior to shooting the decedent, did Officer Okuma advise the decedent she would be shot.  The decedent died a short time later. Officer Okuma claims she believed the drill was a firearm and she made a split second decision to shoot the decedent.

34. From the time Officer Okuma first saw the decedent, to the time she shot the decedent, approximately one minute had passed. The decedent moved slowly in the direction of Officer Okuma because she was responding to her voice. During this entire time Officer Okuma had a clear unobstructed view of the decedent.  At no time prior to shooting the decedent did Officer Okuma use the rifle's scope to identify the drill.  At no time did Officer Okuma attempt to utilize her crisis intervention training.  The other officers present did not fire their weapons even when the decedent pointed the drill at them.

35. Officer Okuma failed to properly evaluate the situation and unnecessarily used lethal force against the decedent. Defendant did not utilize her scope to identify the drill, and failed to utilize her Crisis Intervention Training to resolve the situation.  The unnecessary and excessive force exercised by Defendant, shooting decedent while she was holding a drill and not a threat to the defendant or other officers who were present,  was a substantial factor in causing her wrongful death.

## VI. CAUSES OF ACTION

### FIRST CAUSE OF ACTION

### Violation of the Fourth Amendment to the United States Constitution

### 42 U.S.C. §§ 1983, 1981

### (Against All Defendants)

36. Plaintiffs re-allege and incorporate herein by reference each and every allegation contained in paragraphs 1 through 35 of this Complaint.

37. Defendants' conduct violated the rights of decedent, under the Fourth Amendment right to be free from unreasonable seizures. All the Defendants are liable to Plaintiff under California State Law Civil rights Violations.

38. These violations are compensable pursuant to 42 U.S.C. sections 1983 and 1981.

39. As a result of Defendants' conduct, Plaintiffs have suffered significant physical harm, mental anguish, psychological harm and pain and suffering and the loss of life of Diana Showman.

40. Defendant Wakana Okuma and Doe Defendants' acts and/or omissions were done willfully, deliberately, maliciously, and with reckless or deliberate indifference or conscious disregard to Decedent's constitutional rights, thereby entitling plaintiff to an award of exemplary or punitive damages.

41. The acts of the Defendants and each of them, that constitute deprivation of Decedent's civil rights and are the basis of the claims herein include:

    a. Officer Wakana Okuma and Doe Defendants employed unnecessary and excessive force in Decedent's restraint and detention, inflicting physical trauma to body by shooting her while she was holding a drill and not a threat to defendants. This trauma was a substantial factor in causing his death.

     b.     Officer Wakana Okuma and Doe Defendants were grossly negligent or acted with reckless disregard for the risk of physical injuries and death when they shot decedent without issuing a verbal warning that she would be shot if she did not drop the drill.

     c.     Officer Wakana Okuma and Doe Defendants were grossly negligent or acted with reckless disregard for the risk of physical injuries and death when they forced decedent into handcuffs after being shot and was bleeding to death.

     d.     As a direct and proximate result of defendant's conduct, decedent experienced pain, suffering, emotional distress and the loss of life.

42. Plaintiff s, James Showman and Victoria Caufield-Showman, decedent's parents, bring this claim individually and as a successor in interest to Decedent, and in each case seeks both survival damages and wrongful death damages for the violation of decedent's rights.

43. Plaintiffs seek survival damages, without limitation, based on Decedent's pain and suffering and loss of enjoyment of life.

## SECOND CAUSE OF ACTION

**Violation of the Fourteenth Amendment Due Process to the United States Constitution**

**42 U.S.C. §§ 1983, 1981**

**(Against All Defendants)**

44. Plaintiffs re-allege and incorporate herein by reference each and every allegation contained in paragraphs 1 through 35 of this Complaint.

45. Defendants' conduct violated Decedent's rights under the Fourteenth Amendment to the United States Constitution not to be deprived of liberty without due process of law.

46. These violations are compensable pursuant to 42 U.S.C. sections 1983 and 1981.

47. As a result of Defendants' conduct, Plaintiffs have suffered significant psychological and emotional harm, mental anguish, and pain and suffering, including the loss of care, comfort and society.

48. Officer Okuma's and Doe Defendants' acts and/or omissions were done willfully, deliberately, maliciously, and with reckless or deliberate indifference or conscious disregard to decedent's constitutional rights, thereby entitling plaintiff to an award of exemplary or punitive damages.

49. The acts of the Defendants constituted the deprivation of Decedent's civil rights are the basis of the claims that herein include:

    a.    Officer Okuma's and Doe Defendants employed unnecessary and excessive force in Decedent's restraint and detention, inflicting physical trauma by shooting her from close range as she was holding a drill. This trauma was a substantial factor in causing his death. As a result, the Plaintiffs' rights to familial association, without influence from the state as guaranteed by due process clause of the United States Constitution was violated.

    b.    Officer Wakana Okuma and Doe Defendants were grossly negligent or acted with reckless disregard for the risk of physical injuries and death when they shot decedent without issuing a verbal warning that she would be shot if she did not drop the drill.

    c.    Officer Okuma and Doe Defendants were grossly negligent or acted with reckless disregard for the risk of physical injuries and death when they forced decedent into handcuffs after being shot and was bleeding to death.

    d.    Officer Okuma and Doe Defendants were also grossly negligent and acted with reckless disregard by ignoring the seriousness

of decedent's injuries and forcing her into handcuffs before as was provided timely medical care.

## THIRD CAUSE OF ACTION
### Wrongful Death (California Civil Procedure §377.60)
### (Against All Defendants)

50. Plaintiffs re-allege and incorporate herein by reference each and every allegation contained in paragraphs 1 through 35 of this Complaint.

51. As the surviving heirs and successors in the interest of Diana showman, plaintiffs assert a wrongful death action against all defendants pursuant to §377.60 et. Seq. of the California Code of Civil Procedure. Said claim is based upon the negligent, reckless and wrongful acts band omissions of defendants, as alleged herein, were a direct and legal cause of death of DIANA SHOWMAN and the resulting damage and death to plaintiff.  The wrongful death claims are based on violations of constitutional rights, battery and negligence.

52. Plaintiffs are informed and believe Defendants' unlawful conduct resulted in the wrongful death of Decedent. Plaintiffs are informed and believe and thereon allege that the aforementioned acts of Defendants were willful, malicious, intentional, oppressive, reckless and/or were done in willful and conscious disregard of the rights, welfare and safety of plaintiff, thereby justifying the awarding of punitive and exemplary damages against the individually named defendant in an amount to be determined at the time of trial. .  The wrongful death claims are based on the Federal Civil Rights violations as well as, battery and negligence.

53. As a result of Defendants' actions, Plaintiffs  have suffered a tremendous loss of companionship, comfort, advice, affection, solace and society of their daughter.

////

# FOURTH CAUSE OF ACTION
## (Negligence)
## (Against All Defendants)

54. Plaintiffs re-allege and incorporate herein by reference each and every allegation contained in paragraphs 1 through 35 of this Complaint.

55. Defendants were negligent, and/or reckless and such conduct caused harm to Plaintiff. Defendants were negligent and/or reckless in performing their duties and failed, neglected, and/or refused to properly and fully discharge their responsibilities by, among other things:

   a. Using unnecessary, excessive force against Decedent, which would not have been applied by a reasonable police officer under the circumstances;

   b. Proceeding to effectuate an arrest and detention by fatally shooting the decedent with a high powered AR 15 Rifle, as she was holding a cordless drill and not an immediate threat of death or harm to the defendant or others;

   c. Grossly miscalculating the inherent dangerousness of the situation and thereby creating a situation in which serious bodily harm or death would likely result;

   d. Failing to practice and follow sufficient police procedures to ensure the officers and the public's safety;

   e. Failing to exercise the proper method of arresting and detaining individuals with mental health issues that resulted in the unnecessary use of lethal force; and

   f. Failing to utilize the Crisis Intervention Training that would have prevented in the escalation of lethal force being used on the decedent.

////

   g. Failing to utilize non-lethal force options that were available to the defendant at the time of the shooting.

56. As a result of Defendants' conduct, Plaintiffs have suffered significant physical and emotional harm, mental anguish, pain and suffering, and the loss of care, comfort and society.

## V. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against all Defendants, and each of them, as follows:

   a. For compensatory damages, including both survival damages and wrongful death damages under federal and state law, in the amount to be proven at trial;

   b. For treble damages;

   c. For funeral and burial expenses, and loss of financial support;

   d. For punitive damages against the individual defendants in an amount to be proven at trial;

   e. For interest;

   f. For reasonable costs of this suit and attorneys' fees; and

   g. For such further other relief as the Court may deem just, proper, and appropriate.

## VI. JURY DEMANDED

Plaintiff hereby demands trial by jury on any and all issue's triable by a jury.

DATED: August 14, 2015   LAW OFFICES OF MORALES & LEAÑOS

           By: */s/ Jaime A. Leaños*
             JAIME A. LEAÑOS
             Attorney for Plaintiffs